[29085. Department Two. December 27, 1943.]

RUSSELL SNAVELY et al., *Appellants,* v. THE CITY OF
GOLDENDALE, *Respondent.*[1]

*Simmons & McCann,* for appellants.

*John R. McEwen, Z. O. Brooks,* and *F. A. Smith,* for respondent.

MALLERY, J.—Plaintiffs brought this action against the defendant for damages to plaintiffs' farm caused by the dumping of sewage by the defendant into the Little Klickitat river, to which part of the farm was riparian. The jury returned a verdict for the defendant. The plaintiffs moved for a new trial, which was denied by the trial court on the ground that there had been a failure of proof of any damage. Plaintiffs appeal.

The history of the sewage disposal of the city of Goldendale and of appellants' farm is as follows. In the year 1902,

[1]Reported in 144 P. (2d) 269.

respondent built its first trunk sewer from which the raw sewage was run into the river. In 1906, the city built its first septic tank and from then until the present time the sewage has been run through it. In 1916, a second septic tank was built and in 1936 a chlorinator was installed and since that time the city's sewage has passed through both septic tanks and, in addition, has been chlorinated. In the same year, the city built a new pipe line from its septic tanks to a point farther down the stream into which it flows. The Little Klickitat river is the only means of drainage available for the city.

C. C. Ross established a dairy on the farm in question in 1907, and continued to operate it until 1936. His business grew from a small beginning until he had over one hundred head of cattle on the dairy farm. During these twenty-eight years, the sewage from the city was deposited in the Little Klickitat river and this dairy herd ran in the pasture through which the river flowed. During all of this time the herd was free from Bang's disease. Deverill bought this farm and dairy herd from Ross in 1936 and operated it until his sale to Eighme Brothers in March, 1938.

Eighme Brothers came from Beaver, Oregon, and brought with them a part of the herd they had owned there. In order to get a government permit to ship their dairy herd into Washington, they had it tested for Bang's disease at Beaver. It was found that thirteen of the thirty-one cattle were infected. They shipped twenty-five of these cows to Goldendale and placed them with the herd they had bought from Deverill. A test for Bang's disease made in July, 1939, revealed that all but fourteen head of the dairy herd were infected. They were condemned by the government at that time.

In May of 1939, the Pioneer State Bank of Goldendale, holder of a second mortgage on the land, a chattel mortgage on the cattle, and to whom the Eighme contract of purchase had been pledged, had a receiver appointed and started foreclosure of their mortgage; thereupon the Eighmes turned the property back to the appellants, holders of the

first mortgage. In September, 1939, appellants leased the dairy farm and sold this dairy herd to W. A. Laymen, who operated the farm until March 15, 1940, since which time the farm has lain idle.

The respondent has marshaled seven arguments in support of the judgment. The first one is that there was a complete failure of proof on the question of damages, by appellants, on the trial of this case. Appellants brought this action for damages on the theory that the pollution of the stream had ruined their dairy business. They claimed the entire farm of four hundred acres to be riparian to the Little Klickitat river. In its answer, respondent denied that the land was riparian to the stream. On the trial of the cause, it was proved without dispute that two hundred and forty acres of the farm were not riparian to the stream.

The proof of the amount of damage was sought to be established by proof of the value of the entire farm before and after the pollution of the water complained of. Three-fifths of the farm was nonriparian.

That there can be no damage to nonriparian land by the pollution of a stream is, we believe, axiomatic. That is not to say, however, that one of the factors in determining the value of riparian land may not be the use to which it may be put in connection with nonriparian land. Nevertheless, it is the damage to the riparian land with which we are alone concerned. There is not a scintilla of evidence in this case upon the value of the riparian land, as such, at any time. We must therefore affirm the trial court's denial of the motion for a new trial upon the ground that there had been a failure of proof of any damage.

The appellants make four assignments of error (1) That the court erred in giving instructions Nos. 9, 13, 15, and 16; (2) the trial court erred in refusing the appellants' requested instructions Nos. 11 and 12; (3) that the court erred in excluding the testimony of the appellants' witness, M. S. Campbell, in so far as the same referred to the tests and records of the state department of health;

744

(4) that the court erred in denying appellants' motion for a new trial.

Manifestly assignments of error directed to instructions to the jury, even if well taken, could not have any bearing on the question of the failure to offer competent proof of damage. The same is true with regard to any claimed error in the exclusion from admission in evidence of any public health records or testimony based upon them.

The appellants' proof of damages consisted of testimony touching the value of the entire farm before and after the pollution of the stream complained of. An attempt to segregate the values of the two-fifths of the farm that was riparian would have been a matter of pure speculation, especially in view of the presence of extraneous factors such as the Bang's infection of the dairy herd.

The judgment is affirmed.

SIMPSON, C. J., MILLARD, BLAKE, and ROBINSON, JJ., concur.